Good morning, Gerald Newton for Appellant Rakow. This is a case where Mr. Rakow was charged with five counts acquitted of four. He was told in the indictment that he was being prosecuted in part because an IRS agent filled out a Form 433 from information that he provided and that that form did not tell the government about recent transfers of assets. Counsel, I have some specific concerns and I wonder if you'd help me with them. It was hard for me to understand the facts and I'm not sure I've got them right. The girlfriend did not testify at the criminal trial. Is that right? That is – I was not at the trial. That's my understanding of the record. I don't care if you're – I wasn't at the trial either, but we're both supposed to decide on the facts in the record. She did not testify at the trial, according to my reading of the record. And her testimony from the bankruptcy proceeding came in at the trial? That's also my understanding of the record, Your Honor. Now, I want you to tell me what she testified to at the bankruptcy hearing. Oh, was there any issue of unavailability at the trial? Was she unavailable? Well, I – She was a co-defendant. She was a co-defendant. So she was taking the fifth. Yes.  She was taking the fifth. Now, the testimony that she gave at the bankruptcy court proceeding, what did she say that – let me back up first. The prosecutor introduced that testimony against Rakow, did he, or was it just introduced against the girlfriend? I know there was an admonition. Yes. The testimony was introduced into evidence. The judge gave an admonition that the testimony was to be considered only against the co-defendant, the girlfriend, in the court's parlance. So there was an admonition. There was an admonition. The girlfriend's testimony against Rakow. Correct. Now, what did the girlfriend say that was so prejudicial to Rakow's case that you can't unring the bell and it doesn't matter what the admonition was? Well, what I think was so prejudicial to Mr. Rakow's case is that after the girlfriend's testimony came in, it painted Mr. Rakow as an individual that was taking advantage of his girlfriend, that she essentially had no financial sophistication whatsoever, and that he was trying to use her, under the government's theory, to evade instead of avoid taxes. And what did she say in the bankruptcy court testimony that can destroy his defense? She said essentially that she answered telephone calls for Mr. Flatkin, who was a defendant in another unrelated case. All I need is you have to add a whole bunch of things up. I'm sorry? You have to add up a whole bunch of other things in the record in order to even get a remotely adverse influence. I would not agree with that characterization completely, but I would agree that you have to be aware of the other testimony in the case for her testimony to have significance. But obviously in this case there's going to be other testimony. Essentially the problem with this testimony is the government knew what they wanted from her when she took her bankruptcy examination because our position is the person taking the examination was essentially working with the government at that point in time. The defense didn't get the opportunity to ask her questions, to bring out the defense favorable information that she had that would have tasked this case in a completely different light, and the government got to present the evidence that it wanted without the defense having the chance to do so. Here's my problem. Okay. It looks to me as though when you do put things together, what she said at the bankruptcy court certainly does help the government against Rakow. She's basically saying, I didn't know what was going on. I'm just a girl. I think that's a fair argument. If everybody wants to believe that, they can believe that. Yes. And then they can figure, oh, Rakow's the master manipulator, so he did it. But there's so much other evidence, and that line is so trite and often untrue that I can't see where it would have such overwhelming prejudicial effect that the judge's admonition wouldn't take care of it. Well, I think that it does in this case for a number of reasons. The first reason is Mr. Rakow was acquitted of four of these counts that we shouldn't let slide out the window. The second reason is on the account that he was convicted of, he was tried under one theory and likely convicted under another theory. In closing argument, the prosecutor told the jury at reporter's transcript 1258, the whole point of our case is that he's hiding behind these loans. The indictment talks about the form 433 and doesn't say anything about loans. Loans, these loans essentially came up in the examination of the IRS agent towards the very end of the trial on July the 11th, where she then talks about the fact that Rakow didn't disclose these loans, and that's at reporter's transcript 1258. The thing about it is what she says is so self-interested that it doesn't seem to be of overwhelming force, saying I didn't know anything, I'm just a girlfriend here. It's so self-interested when she's sitting in the defendant's chair, too, that I would think the judge's admonition would be enough to cure it, and I wonder why not. Because of the closeness of this case. I see. The acquittals show the closeness of the case. I believe this case was an extremely close case. The jury was out on this case for quite some time. It seems clear to me that the government switched its theory on this case. It seems clear to me that the jury instruction given by the court allowed the government to switch its theory. I believe that the court actually told the jury an affirmative act of evasion requires the government to prove that the defendant committed a willful affirmative act of any kind, constituting an evasion or attempted evasion of those income taxes for the year in question. And the act of any kind that people were talking about that had substance, that didn't result in acquittals in the other count, was filling out the form and not disclosing loans on the form where the defense had an explanation. The government's argument made it very clear that the affirmative act that the jury had unanimously defined was one alleged in the indictment. I, Your Honor, I did not read that statement to make that perfectly clear, and I also read the admonition that the court gave that statements and arguments of counsel weren't evidence, and when I read that in light of the instruction that the judge gave, it seemed clear to me. Well, if there is any ambiguity in the instruction, and there is some, then isn't the government's argument is certainly pertinent to the question of whether it could have reasonably been misinterpreted by the jury. I agree, and I believe that in several places in the government's argument, they told them that you can convict Mr. Raico if you find that he didn't disclose the form or the loans on the form. I read their argument to say that. If I'm going to reserve rebuttal, I cover. If there's questions, I'm happy to answer questions right now. Do you have a question? Okay. Thank you. Thank you. Mr. Gonzales. Good morning. May it please the Court, Jason Gonzales for the United States. Your Honor, with respect to the question of the government's argument relating to the loans, as the government pointed out in its brief, the argument that was made was in direct response to the defense's claim in its closing argument that the defendants were acting in good faith. How could they have been trying to cheat the IRS when they kept such meticulous records? There was no evidence of willfulness and things like that. So the government came back and said, with respect to what the defense has just said about how they could be having bad faith or acting willfully, the government talked about the fact that all the documentation was not disclosed to the IRS, including the documentation showing that the defendants had these loans that were not disclosed to the IRS. So the way that this evidence came in during the argument and during the trial was to show evidence of willfulness and to rebut the defendant's claim that they were acting in good faith. That was essentially the crux of their argument. They did not deny that many of these acts happened. They just said it's all explainable because we were acting in good faith. We were trying to work things out with the IRS. We had these meticulous records. How could we be trying to hide anything? Well, we said, look, you didn't disclose those records to the IRS. That's an important fact that shows willfulness. So that's how that argument came up. Yeah. The problem, of course, arises simply because there is an ambiguity in the instruction. That's correct. That's correct. The Court's instruction could have been clearer, but it did clearly direct the jury to the indictment and said that the jury must agree on an affirmative act that was committed, but the government doesn't have to prove each affirmative act alleged in the indictment. So it wasn't as explicit as it could be, but it did direct the jury towards the indictment. I agree with that. But it did leave the door open in the first clause. So is there argument that you made that, in effect, resolves the ambiguity? Yes. As I believe was alluded to in the defense counsel's argument, the government, in its closing, said essentially that the jury has to consider the affirmative acts that are alleged in the indictment in deciding whether or not to convict the defendants. The argument was that the indictment in this case charges 22 affirmative acts to evade or defeat the payment of tax, but as the Court has instructed you, you need find only one, but you must agree on that one. So, again, it's not as explicit as it could be, but it is clearly a direction to the jury that they are to consider what's been alleged in the indictment, and they're supposed to convict on one of those things. So I would submit that this jury instruction question is not the only factor that the Court should consider when deciding this constructive amendment question. It should consider that, obviously, and then the way the argument was presented about the loans in the case by the government, which was in response to the defense's claims of good faith and lack of willfulness. The loan evidence was directed towards that. And then the third factor, I would say, is that the government's case was not just about this IRS Form 433, Inactive Evasion 7. It appears that the defense is sort of suggesting the case focused solely on this one act and that the evidence was about the form, this IRS form, and that the government ran into trouble with this failure to disclose asset transfers theory and then changed in midstream to allege or to argue an unalleged active evasion failure to disclose the loan. That's actually not the case. The case was charged as a case in which the defendant did not disclose to the IRS that he was basically hiding his assets in his girlfriend's name. How did he manage to get acquitted on so many counts? That is a good question, Your Honor. I don't know. I thought the evidence was good. I was the trial counsel. You've read the record, and the record is all accounts. Yes. And the record suggests that as well. I've done several trials, and sometimes I'm mystified by the results. But the evidence is clear regardless that there was sufficient evidence to support the jury's verdict with respect to the entire count. We have to take the verdict to mean there's a reasonable doubt on each of the counts where he was acquitted, not that he didn't do them, but that there's at least a reasonable doubt. Yes. As to whether he did. And I wonder what your theory is for consistency and for the immateriality of the girlfriend's bankruptcy testimony bolstering what appellant's counsel urges is a fairly weak case as shown by the acquittals. Right. But with respect to the bankruptcy testimony of the co-defendant, Del Bianco, the recitation that was given in the previous argument was correct. The defendant, Del Bianco, was a co-defendant. She was present at the trial. She did not testify. The bankruptcy depositions were played to the jury. And the testimony that she gave was fairly foundational. It was not the sort of powerfully incriminating, facially incriminating statements that are contemplated by Bruton in its related cases. But it sounds kind of material. I mean, he's saying, I didn't do anything wrong. And she's saying, I just was doing what he told me to do, which means that he was using her to hide income. Well, actually, the testimony is slightly different than that I would submit. Basically, she was just saying, for one thing, I was aware that the defendant had a tax lien against him. I had asked the defendant, Bracow, to help me manage my stock. I don't have much experience with the stock market. I didn't have a whole lot of income prior to the time period of the scheme, alleged scheme. I worked as a bookkeeper. Defendant was one of my clients. Defendant Bracow was one of my clients. And my work for him included doing book work for his taxes and organizing his administrative life.  Her testimony, if I read it, doesn't paint her as a stay-at-home bimbo of some kind. She's presenting herself, as I read it anyway, as some kind of businesswoman, not as good a businesswoman as maybe Bracow's a businessman. But it looks to me like she had her own business before she had him. She did tax consulting. She was accounting, et cetera, et cetera. Is that right? Yeah. Basically, the thrust of it, with respect to her background at least, was that she was a bookkeeper. And that's what she did for the defendant as well. She sort of organized his bookkeeping and his finances. They portrayed the defendant, I think it's accurate, that he was the idea man and had all these more aggressive and sophisticated investment ideas and things like that. But the point of her testimony, I think, or at least the analysis as relevant here, is that it's not powerfully incriminating. All this stuff that I just recited and what she said in the trial, in and of itself, doesn't show any illegal conduct. It's not against the law to help someone. Why would the government put it in if they didn't think it would tend to prove Bracow's or hers, well, at least hers, guilt? Right. It was admitted, just to be clear, solely against her. There was a jury instruction to that effect. And the point of it was to show that she was. But how did it tend to show her guilt? Well, she was charged with aiding and abetting the tax evasion. And so we needed to show that she knew. But what was put in, I don't know the record as well as I'd like to, but I thought what was put in was her saying, I didn't know. I didn't know we were doing anything wrong. I was just taking calls and doing what he said. That does not tend to prove that she was aiding and abetting. It tends to prove that he was using her. Yes. I mean, the testimony would show that first she knew of the tax debt, which would be relevant to showing she aided and abetted the tax evasion. She knew there was a tax to evade and that she was involved in the defendant's or had a role in the defendant's managing of her taxes. I'm sorry, her investments. She had investments and he managed them. She did work for Reed Slatkin. And then it was of this nature, which was that she did answer phone calls and things like that. And when you, again, put all that together with a lot of other evidence, which was in the case, because this case was not solely, just as it wasn't about that one act of Evasion 7, it wasn't just about her testimony. These were just small pieces in the puzzle. I may not have made myself clear. It looks like what she said at the bankruptcy court tends to exonerate her rather than incriminate her. So I don't see quite why the government would tend to put it in against her. She's blaming him for everything. Perhaps I might disagree with the general thrust of the wife. Okay. Just give it to me again. I must not have understood. The reason I would disagree, it just shows that she is involved, basically shows she knew of the defendant's finances in brief. I think that probably is enough of a summary, really. She was aware of what was going on with respect to his finances because she was his bookkeeper. She was aware of his tax debt. And she was also aware of his work and her work for Mr. Slatkin. I see. So then you can tell the jury, look, she knows he has a tax debt. She knows his general financial affairs. So don't believe that she didn't know she was helping him pay taxes. Yes, yes. I think that's right. So, again, but it's important to note that you have to put that together with a lot of other evidence. It is in and of itself not powerfully incriminating. So Bruton, I don't think, especially because there's a limiting instruction, is not implicated there. And briefly, just to sum up, or to briefly raise another point, the Court was obviously aware that there was the recent Stringer decision, which changed the terrain substantially, I think, with respect to the defendant's parallel proceedings argument. It basically establishes that in a situation where, in Stringer at least, there was a lot more coordination between the civil side and the criminal side than there was here, that there's no due process violation or Fifth Amendment violation if the defendant was advised in a very general way that his testimony could be used against him. In this instance, we have a finding that is not clearly erroneous, that the defendant actually knew that he was the — that his testimony could be used against him. He knew that he had the Fifth Amendment right, but had made, as counsel said, the courageous decision to testify. Nonetheless, I see that I'm about out of time. If the Court has any questions, I'll answer them. Otherwise, I'll submit. Thank you. Thank you. Mr. Newton. In response to the last argument first, in Stringer, there was an explicit warning, both of the right against self-incrimination and also the fact that the matter could be referred. The point of the warning is to communicate information so that the defendant can assess the risk. Right. There's no question that the defendant had enough information to assess the risk. So why do you need to have some other kind of formality? Well, here there was no — Technicality. Here there wasn't the explicit warning that was given in Stringer. Well, I understand. My point is the only point of a warning is to give — communicate enough information so that the defendant can assess. We know that the attorney knew enough. Yeah. We don't know that RACO knew enough, based on this record. Two cases that I think are relevant on the instruction that the jury gave, or that the judge gave to the jury with regard to the acts. I think that this is just almost exactly the instruction that was disapproved in United States v. Adamson at 291 Fed 3rd 606 on page 611. And I think that the argument of the U.S. attorney was not nearly as sufficient as what was relied upon in U.S. v. Baggart, B-H-A-G-O-T 436 Fed 3rd 1140 at 1145. I think that when we combine all of this, that it's clear that Mr. RACO was convicted on something that he wasn't charged with. And I think that we have to — we have to give the acquittals at least as much weight that they were given where the jury hung on remaining counts. In the United States v. Shipsy, another amendment case, S-H-I-P-S-E-Y 190 Fed 3rd 1081 at 1087, there the jury was unable to reach verdicts in the other count, and they had to hold that that error was reversible. Here the jury reached verdicts on the other count saying he didn't do it or there's not enough evidence to prove that he did it. So certainly that should have at least as much weight as a hung jury on remaining counts. If there's questions, I would be pleased to attempt to address them. Okay. Thank you, Mr. Newton. Thank you very much. It's been a pleasure as always to be here. The matter of this argument will be submitted. And next year's argument in Cosmos. Thank you.
judges: Fernandez, Rymer, Kleinfeld